## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| REEL WORLD SPORT FISHING LLC, | § § § |
| *Plaintiff*, | § Civil Action No. § |
| v. | § Sec. § |
| BASS PRO INTELLECTUAL PROPERTY, L.L.C. & BASS PRO OUTDOOR WORLD, L.L.C., | § Judge § § Mag. § |
| *Defendants*. | § § § |

### COMPLAINT FOR DECLARATORY JUDGMENT OF
### PATENT NON-INFRINGEMENT, UNENFORCEABILITY, AND INVALIDITY

NOW INTO COURT, through undersigned counsel, comes Plaintiff Reel World Sport Fishing LLC (hereinafter "Reel World Sport Fishing" or "Plaintiff"), who hereby presents this Complaint for Declaratory Judgment of Patent Non-Infringement, Unenforceability, and Invalidity against Defendants Bass Pro Intellectual Property, L.L.C. and Bass Pro Outdoor World, L.L.C. (hereinafter collectively "Defendants"), and alleges as follows:

### NATURE OF THE ACTION

1.  This is a civil action brought pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202, and FED. R. CIV. P. 57, seeking a declaratory judgment of non-infringement, unenforceability, and invalidity of United States Patent No. 8,789,308 (hereinafter "'308 Patent") under the Patent Laws of the United States, 35 U.S.C. § 100, *et seq*., so as to enable Plaintiff to continue its lawful activities of designing, developing, and marketing its fishing lures sans Defendants' nuisance and overly broad challenges of patent infringement that intend to wrongfully restrain Plaintiff's competition of non-infringing goods.

## THE PARTIES

2.     Reel World Sport Fishing is a limited liability company organized and existing under the laws of the State of Washington with its principal place of business in Poulsbo, Washington, and is owned and managed by Paul Nicholson and Andy LeBlanc, individuals residing in the States of Washington and Louisiana, respectively.  Reel World Sport Fishing is in the business of designing, developing, and marketing its fishing products described herein, including outriggers, dredges, and lures, and is Plaintiff here.

3.     Upon information and belief, Bass Pro Outdoor World, L.L.C. (hereinafter "Bass Pro Shops"), a chain of retail shops throughout the United States that offers and sells hunting, fishing, camping, and other related outdoor recreation merchandise, is a limited liability company organized and existing under the laws of the State of Missouri with its principal place of business at 2500 East Kearney Street, Springfield, Missouri 65898 and is also licensed to do business in the State of Louisiana where it maintains at least one regular and established place of business, including in Denham Springs, and is made Defendant here.  Bass Pro Shops may be served with process through its registered agent for service of process in Louisiana, CT Corporation System, at 3867 Plaza Tower Drive, Baton Rouge, Louisiana 70816.

4.     Upon information and belief, Bass Pro Intellectual Property, L.L.C. (hereinafter "Bass Pro I.P."), an affiliate of Bass Pro Shops that maintains the retailer's intellectual property, including its trademarks and patents, is a limited liability company organized and existing under the laws of the State of Missouri with its principal place of business at 2500 East Kearney Street, Springfield, Missouri 65898, and is made Defendant here.  Bass Pro I.P. may be served with process through its registered agent for service of process in Missouri, CT Corporation System, at 120 South Central Avenue, St. Louis, Missouri 63105.

## **JURISDICTION AND VENUE**

5.     This United States District Court has original and exclusive jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. §§ 1331 and 1338(a) for claims asserted herein arising under the Patent Laws of the United States, 35 U.S.C. § 100, *et seq*.

6.     This United States District Court also has subject matter jurisdiction based upon an actual controversy between the parties under the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202, for the relief requested herein of declaratory judgment with respect to the '308 Patent.

7.     This United States District Court may exercise jurisdiction over Bass Pro Shops on the grounds that, *inter alia*, it has continuous and systematic contacts with the State of Louisiana, including maintaining at least one regular and established place of business where it regularly offers for sale and markets its merchandise within this State and District, so as to purposefully avail itself of the privilege of conducting business within the State of Louisiana.

8.     This United States District Court may also exercise jurisdiction over Bass Pro Shops on the grounds that, *inter alia*, it has designated a registered agent in the State of Louisiana for service of process.

9.     This United States District Court may exercise jurisdiction over Bass Pro I.P. on the grounds that, *inter alia*, it and/or its agents have purposefully directed its activities to the State of Louisiana and its residents, particularly its patent enforcement activities, including the mailing of multiple letters containing accusations of patent infringement and demands in remedy thereof, in connection with a licensing agreement with Bass Pro Shops, who maintains at least one regular and established place of business where it regularly offers for sale and markets its merchandise within this State and District, so as to purposefully avail itself of the privilege of conducting business within the State of Louisiana.

10. Venue is proper in this District, the Middle District of Louisiana, under 28 U.S.C. §§ 1391(b) and 1391(c) on the grounds that, *inter alia*, Bass Pro Shops is subject to personal jurisdiction in this State and District.

11. Venue is proper in this District, the Middle District of Louisiana, under 28 U.S.C. §§ 1391(b) and 1391(c) on the grounds that, *inter alia*, Bass Pro I.P. is subject to personal jurisdiction in this State and District.

## CASE AND CONTROVERSY

### Defendants' '308 Patent

12. The '308 Patent entitled "FISHING LURE" indicates it was issued by the United States Patent and Trademark Office (hereinafter "USPTO" or "Patent Office") on July 29, 2014. A true and correct copy of the '308 Patent is attached hereto as Exhibit "A."

13. Bass Pro I.P. currently claims to have right, title, and interest in the '308 Patent as the patentee by assignment, per the face of the '308 Patent and Defendants' representations.

14. Upon information and belief, Bass Pro I.P. is the patentee of the '308 Patent on behalf and to the benefit of Bass Pro Shops and its corporate ownership, as they are affiliated to each other.

15. Upon information and belief, Bass Pro Shops is the exclusive licensee of the '308 Patent.

16. Upon information and belief, Defendants' licensing agreement structures a relationship beyond mere receipt of royalty income due to the fact that, *inter alia*, Bass Pro. I.P. undertook the obligation of enforcing the '308 Patent on behalf of Bass Pro Shops, the exclusive retailer of fishing lures covered by the '308 Patent in the State of Louisiana whereby Bass Pro I.P. exercises control over Bass Pro Shops' sales and marketing activities thereof.

17. The original application from which the '308 Patent claims priority, United States Patent Application No. 12/249,555 (hereinafter "'555 Application"), was filed on June 17, 2008. The

'555 Application underwent over six years of prosecution in the Patent Office before it was allowed to issue as the '308 Patent on July 29, 2014. True and correct copies of published documents representing six years of patent prosecution are attached hereto as Exhibits "B" through "L."

18. When the '555 Application was first reviewed by the Patent Office in 2010, the Examiner issued an Office Action dated July 29, 2010, and rejected each of the pending claims of the application. *See* Ex. B, Jul. 29, 2019 Office Action.

19. Specifically, in the Office Action, the Examiner stated that claims 1, 2, and 5 were "clearly anticipated" by prior art. *Id*. at 5. The Examiner further rejected each of the remaining claims under 35 U.S.C. 103(a) as being unpatentable in light of multiple prior art references. Throughout the Office Action's sixteen pages, the Examiner detailed why each of the pending claims was either anticipated or rendered obvious by references predating the '555 Application.

20. In support of his rejections, the Examiner listed thirteen references that either anticipated or rendered obvious the '555 Application. Ex. B.

21. On December 10, 2010, Defendants submitted its response to the Examiner's Office Action. Ex. C, Dec. 10, 2010 Amendment. In their twenty-one-page submission, Defendants attempted to argue for the patentability of each of the pending claims that were rejected by the Examiner.

22. On March 7, 2011, after his review of the aforementioned response of the Defendants, the Examiner issued a Final Rejection against each of the pending claims. Ex. D, Mar. 7, 2011 Final Rejection.

23. The Final Rejection dated March 7, 2011 held that each pending claim was obvious and unpatentable under 35 U.S.C. 103(a). In the twenty-three-page Final Rejection, the Examiner

detailed his reasoning for rejecting each of the twenty-seven pending claims, and provided the list of references that he applied to each of the rejected claims. *See id*.

24. On June 7, 2011, Defendants again tried to argue for the patentability of their pending claims. Ex. E, Jun. 7, 2011 Amendment. In this second Office Action Response, Defendants submitted an eighteen-page brief arguing that their invention was not obvious in light of the Examiner's references.

25. Only nine days after Defendants' arguments were submitted, the Examiner issued an Advisory Action rejecting the Defendants' arguments. Ex. F, Jun. 16, 2011 Advisory Action.

26. In this Advisory Action dated June 16, 2011, the Examiner stated, "THE REPLY FILED 07 June 2011 FAILS TO PLACE THIS APPLICATION IN CONDITION FOR ALLOWANCE." *Id*. at 1 (emphasis in original).

27. The Advisory Action acknowledged the Defendants' arguments set forth in the second Office Action Response, but maintained the obviousness rejection against each pending claim. Specifically, the Advisory Action held that "[c]laims 1-27 remain rejected under 35 U.S.C. 103(a) over the prior art of record as applied in the Final Rejection mailed on 03/07/2011." *Id*. at 2.

28. Defendants filed a Notice of Appeal and Pre-Appeal Brief Conference Request with the Board of Patent Appeals and Interferences. Ex. G, Aug. 31, 2011 Notice of Appeal. The Pre-Appeal Brief Conference Request, dated August 31, 2011, described the Defendants' position regarding the prior art and the supposed patentability of the rejected claims. *See id*. at 1-4.

29. In response to the Pre-Appeal Brief Request, the reviewing panel held that each of claims 1-27 remained rejected. Ex. H, Sept. 21, 2011 Pre-Appeal Brief Conference Decision.

30.     After this panel decision, Defendants abandoned its patentability arguments and amended the pending claims, narrowing the coverage sought by the patent application. *See* Ex. I, Jan. 3, 2012 Amendment, at 1-10.

31.     Specifically, on January 3, 2012, Defendants canceled twenty-five of the previously-pending twenty-seven claims. *Id*. at 2. Defendants additionally amended the two remaining original claims, adding six new limitations to claim 19. *Id*. These six new limitations were also added by reference to claim 20, which depended upon claim 19. *Id*.

32.     The January 3, 2012 Amendment also presented eleven new claims for the Examiner's review. *Id*. at 2-3. Each of these new eleven claims included the six new limitations that were added to claim 19. *Id*. In its submission, which included seven pages of Defendants' remarks and arguments in support of the amendments, Defendants "earnestly solicited" a Notice of Allowance by the Patent Office. *Id*. at 9.

33.     On October 4, 2013, the Patent Office rejected each pending claim. Ex. J, Oct. 4, 2013 Non-Final Rejection.

34.     In this Office Action, the Examiner again stated that each of the pending claims were obvious in light of the prior art. Further, the Examiner provided <u>multiple</u> combinations of references against the pending claims, such that he offered more than one theory of unpatentability against, for example, claim 19. *See*, *e.g.*, *id*. at 3 and 9 ("Claims 19, 20, 28, 31, 35, 37, 38 are rejected under pre-AIA 35 U.S.C. 103(a) as being unpatentable over Yeung 2006/0260176 and Scott 7,356,963 or Kleine et al. 3,735,518."; "Claims 19, 20, 28, 29, 31, 35, 37, 38 are rejected under pre-AIA 35 U.S.C. 103(a) as being unpatentable over Maus 1,109,439 in view of Yeung 2006/0260176 and Scott 7,356,963 or Kleine et al. 3,735,518.").

35. Defendants submitted an additional amendment in response to the October 2013 Rejection. Ex. K, Jan. 22, 2014 Amendment. In this amendment, Defendants specified that each claim must include "a left fish head member and a right fish head member adhered to each other at inner surfaces thereof and to a portion of the flexible fabric core so as to form" a fish head devoid of a diving bill. *Id*. at 2.

36. In response to this Amendment, on March 31, 2014, more than five years after the application's original filing, the Examiner issued a Notice of Allowance on the claims. Ex. L, Mar. 31, 2014 Notice of Allowance.

### Defendants' Purported Monopoly on Multi-Section Fishing Lures and Other Similarly Designed Jointed Lures

37. Reel World Sport Fishing designs, develops, and markets its fishing products, such as outriggers, dredges, and lures. In particular, Reel World Sport Fishing designs, develops, and markets its LIVE OCEAN brand of fishing lures (hereinafter "LIVE OCEAN Fishing Lures"), which includes lures of various sizes and coating that mimic a live fish and its natural swimming action when trolled from 2-knots to 10-knots under the following models: Spanish Sardine, Bonita, Flying Fish, Hot Pink, Mullet, and Smoking Hot, Ballyhoo Blue, Ballyhoo Black, and Ballyhoo Pink. A visual representation and description of the LIVE OCEAN Fishing Lures provided to customers is attached hereto as Exhibit "M."

38. LIVE OCEAN Fishing Lures are created by a high pressure injection molding process whereby Dyneema fiber, an ultra-high-molecular-weight polyethylene, is placed as a flexible "spinal cord" between two mirroring molds, each being a half of the lure and containing eight sections that form "body" segments of a "fish," except for the "head," before the molds are combined and liquid acrylonitrile butadiene styrene (hereinafter "ABS") is injected into the

combined mold, creating eight solidified ABS plastic segments.  Afterwards, the portion of the lure representing the "head" is welded to the end "body" segment.

39. The aforementioned process results in <u>single</u> ABS plastic segments, each completely encapsulating a flexible Dyneema <u>fiber</u>.  The process does not yield separated segments that are initially disjoined before being attached to opposite sides of a fabric core, as described in the '308 Patent.

40. LIVE OCEAN Fishing Lures' design dates back as early as March of 2011 and was released into the market in early 2012.

41. Reel World Sport Fishing displays its LIVE OCEAN Fishing Lures at trade shows throughout the United States.  In particular, Plaintiff was most recently an exhibitor at the International Convention of Allied Sportsfishing Trades (ICAST) in July of 2016 where a Bass Pro Shops' merchandiser of fishing tackle expressed interest in acquiring <u>new</u> products and a desire to retail Plaintiff's LIVE OCEAN Fishing Lures.

42. Reel World Sport Fishing received a letter, dated August 19, 2016, and a follow-up letter, dated September 20, 2016, each regarding "Infringement of Bass Pro Intellectual Property, L.L.C.'s U.S. Patent No. 8,789,308 Fishing Lure (Reel World Sport Fishing)" (hereinafter "First Demand Letter" and "Second Demand Letter," respectively, and collectively "Demand Letters"), from counsel of Defendants, accusing Plaintiff of infringing Defendants' '308 Patent.  A true and correct copy of the First Demand Letter and Second Demand Letter are attached hereto as Exhibit "N" and Exhibit "O," respectively.

43. Defendants' First Demand Letter broadly asserts that the '308 Patent covers any multi-section and similarly designed jointed fishing lure by alleging that Plaintiff's "multi-section Flying

Fish fishing lures" and "other similarly designed jointed lures infringe one or more claims of the '308 Patent" (hereinafter collectively "Accused Lures"). *See* Ex. N.

44. The Accused Lures specified in the Demand Letters seemingly include the entire brand of LIVE OCEAN Fishing Lures described herein, as the "Flying Fish" is a particular model under the brand and design. *See* Ex. M.

45. Defendants' Second Demand Letter reinforced the aforementioned assertion by alleging "the accused lures and other similarly designed jointed lures do in fact infringe one or more claims of the '308 patent." Ex. O.

46. Defendants' First Demand Letter is ambiguous in regards to the description of their own product line of fishing lures that claim protection under the '308 Patent by alleging that "[t]he fishing lures sold by Bass Pro which [sic] are covered by the '308 patent have had considerable commercial success and constitutes an important component of Bass Pro's product line." Ex. N. It is unclear whether Defendants are claiming (a) their fishing lures that are covered by the '308 Patent in particular are of importance or (b) all fishing lures sold by Bass Pro Shops are covered by the '308 Patent, and are of importance.

47. Defendants' Demand Letters provided no analysis as to how Reel World Sport Fishing's LIVE OCEAN Fishing Lures (i.e., Accused Lures) infringe the '308 Patent. The Demand Letters only offer the conclusory statement that there is an infringement, predicated on merely being a multi-section or similarly designed jointed fishing lure.

48. Granted Defendants' aforementioned description of the Accused Lures in the Demand Letters in comparison with their own fishing lures, Defendants are claiming a monopoly on all multi-section fishing lures and other similarly designed jointed fishing lures, citing the '308 Patent.

49. However, the '308 Patent is limited in scope and does not disclose protection over all multi-section and jointed fishing lures.

50. Therefore, Defendants unlawfully claim a monopoly over all multi-section and jointed fishing lures when asserting that Plaintiff's LIVE OCEAN Fishing Lures (i.e., Accused Lures) are an infringement of the '308 Patent by merely being a multi-section or similarly designed jointed fishing lure. Accordingly, Reel World Sport Fishing's Accused Lures <u>do not</u> infringe, either directly or indirectly, any valid and enforceable claim of the '308 Patent either literally or under the doctrine of equivalents.

51. Nevertheless, Defendants demanded on multiple occasions the following from the Reel World Sport Fishing regarding the LIVE OCEAN Fishing Lures (i.e., Accused Lures), immediately: (a) cease and desist from further distribution, sale, offer for sale, advertisement, and importation; (b) identify the manufacturer's name and corresponding address; (c) identify any other suppliers; and (d) account for all damages resulting from sales by disclosing to Defendants the number of units sold, the price per unit, and the gross sales amount.

52. Defendants' Demand Letters are unequivocally implying a threat of litigation against Reel World Sport Fishing by virtue of the foregoing demands and allegations outlined in the Demand Letters.

53. Defendants' allegations of Reel World Sport Fishing's infringement of the '308 Patent place a cloud of fear, uncertainty, and doubt over Reel World Sport Fishing's products, particularly the LIVE OCEAN Fishing Lures (i.e., Accused Lures), and relationships with its manufacturer and potential distributors, suppliers, and customers, when Reel World Sport Fishing's products <u>do not</u> infringe, either directly or indirectly, any valid and enforceable claim of the '308 Patent, either literally or under the doctrine of equivalents.

54. Reel World Sport Fishing's legal rights are clearly adverse with Defendants' allegations and interests.

55. The aforementioned demands, threat of litigation, and cloud of fear, uncertainty, and doubt will persist absent a resolution of the claim of patent infringement alleged by Defendants in the Demand Letters.

56. This controversy is amenable to specific relief through a decree of conclusive character from this Court.

57. Notwithstanding the following, Reel World Sport Fishing retains the right to assert affirmative defenses (e.g., patent misuse) as an additional route of protection of its rights in response to any counter-claim asserted by Defendants.

## FEDERAL CLAIMS

### Count I, Declaratory Judgment of Non-Infringement of the '308 Patent
### 28 U.S.C. §§ 2201(a), 2202

58. Reel World Sport Fishing hereby re-alleges and incorporates by reference each and every preceding allegation contained in Paragraphs 1 through 57 hereof as if fully set forth herein.

59. Reel World Sport Fishing has a reasonable apprehension that Defendants will file a lawsuit against Reel World Sport Fishing alleging infringement of the '308 Patent.

60. Reel World Sport Fishing, nor its products, including the LIVE OCEAN Fishing Lures (i.e., Accused Lures), did not infringe and are not infringing, whether directly or indirectly through contributory or induced infringement, either literally or under the doctrine of equivalents, any valid and enforceable claim of the '308 Patent by engaging in any act of infringement, including manufacturing, importing, marketing, using, selling, or offering to sell products that embody any patentable and patented invention described in the '308 Patent. Accordingly, Reel World Sport Fishing's activities do not violate 35 U.S.C. § 271.

61. A judicial declaration is both necessary and appropriate so that Reel World Sport Fishing may ascertain its rights to manufacture, import, market, use, sell, or offer to sell its products, including the LIVE OCEAN Fishing Lures (i.e., Accused Lures), in light of the '308 Patent broadly asserted against Reel World Sport Fishing in the Demand Letters.

62. Consequently, a substantial and continuing controversy of sufficient immediacy and reality exists, constituting as a valid and justiciable controversy between the parties that warrants the issuance of a declaratory judgment under 28 U.S.C. §§ 2201(a), 2202 and FED. R. CIV. P. 57 that Reel World Sport Fishing's manufacture, import, market, use, sale, or offer for sale of its products did not infringe and is not infringing, directly or indirectly through contributory or induced infringement, any valid and enforceable claim of the '308 Patent in violation of the Patent Laws of the United States, 35 U.S.C. § 100, *et seq*.

### Count II, Declaratory Judgment of Invalidity of the '308 Patent
### 28 U.S.C. §§ 2201(a), 2202

63. Reel World Sport Fishing hereby re-alleges and incorporates by reference each and every preceding allegation contained in Paragraphs 1 through 62 hereof as if fully set forth herein.

64. Reel World Sport Fishing has a reasonable apprehension that Defendants will file a lawsuit against Plaintiff alleging infringement of the '308 Patent, presupposing the validity of the '308 Patent and its claims.

65. The claims of the '308 Patent are invalid for failure to comply with one or more of the statutory requirements for patentability under the Patent Laws of the United States, 35 U.S.C. § 100, *et seq*., including but not limited to §§ 101, 102, 103, and 112.

66. A judicial declaration is both necessary and appropriate to determine that the claims of the '308 Patent are invalid for failure to comply with statutory prerequisites, in light of the '308 Patent broadly asserted against Reel World Sport Fishing in the Demand Letters.

67.     Consequently, a substantial and continuing controversy of sufficient immediacy and reality exists, constituting as a valid and justiciable controversy between the parties that warrants the issuance of a declaratory judgment under 28 U.S.C. §§ 2201(a), 2202 and FED. R. CIV. P. 57 that the claims of the '308 Patent are invalid under the Patent Laws of the United States, 35 U.S.C. § 100, *et seq.*, including but not limited to §§ 101, 102, 103, and 112.

### Count III, Declaratory Judgment of Unenforceability of the '308 Patent
### 28 U.S.C. §§ 2201(a), 2202

68.     Reel World Sport Fishing hereby re-alleges and incorporates by reference each and every preceding allegation contained in Paragraphs 1 through 67 hereof as if fully set forth herein.

69.     Reel World Sport Fishing has a reasonable apprehension that Defendants will file a lawsuit against Plaintiff alleging infringement of the '308 Patent, presupposing the enforceability of the '308 Patent and its claims.

70.     The claims of the '308 Patent are unenforceable due to prosecution laches.

71.     A judicial declaration is both necessary and appropriate to determine that the claims of the '308 Patent are unenforceable due to prosecution laches, in light of the '308 Patent broadly asserted against Plaintiff in the Demand Letters.

72.     Consequently, a substantial and continuing controversy of sufficient immediacy and reality exists, constituting as a valid and justiciable controversy between the parties that warrants the issuance of a declaratory judgment under 28 U.S.C. §§ 2201(a), 2202 and FED. R. CIV. P. 57 that the claims of the '308 Patent are unenforceable due to prosecution laches.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendants on all claims for relief asserted herein, as follows:

A.  Declaring that Plaintiff and its products, the LIVE OCEAN Fishing Lures (i.e., Accused Lures), did not infringe and are not infringing, directly or indirectly through contributory or induced infringement, any valid and enforceable claim of the '308 Patent in violation of the Patent Laws of the United States, 35 U.S.C. § 100, *et seq.*;

B.  Declaring that the claims of the '308 Patent are invalid under 35 U.S.C. §§ 101, 102, 103, and 112;

C.  Declaring that the claims of the '308 Patent are unenforceable against Plaintiff due to prosecution laches;

D.  Enjoining, preliminarily and permanently, Defendants and their officers, directors, employees, servants, agents, affiliates, attorneys, and all others acting in privity or in concert with any of them, and their parents, subsidiaries, divisions, successors and assigns, from asserting, including filing or prosecuting any civil action, or threatening to assert any charge of infringement of the '308 Patent against manufacturers, distributors, suppliers, customers, potential customers, or users of Plaintiff's products, the LIVE OCEAN Fishing Lures (i.e., Accused Lures);

E.  Declaring this to be an exceptional case and awarding Plaintiff its costs and expenses in this action, including reasonable attorneys' fees pursuant to 35 U.S.C. § 285; and

F.  Granting Plaintiff such other and further relief as this Court deems just and proper.

Dated: October 11, 2016                     Respectfully submitted,

                                            / Thomas S. Keaty /
                                            Keaty Law Firm
                                            Thomas S. Keaty – 7666, T.A.
                                            365 Canal Street, Suite 2410
                                            New Orleans, Louisiana 70130
                                            Tel.: (504) 524-2100
                                            Fax: (504) 524-2105
                                            tskeaty@keatypatentfirm.com
                                            *Attorney for Plaintiff*